**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARSHA B. CONNER,
Plaintiff-Appellee,

v.

STEVEN A. MCGRAW, Clerk of the
Circuit Court of Roanoke County,
Virginia,
Defendant-Appellant,                                        No. 94-1313

and

ELMER C. HODGE, County
Administrator, Roanoke County,
Virginia; THE COUNTY OF ROANOKE,
VIRGINIA,
Defendants.

MARSHA B. CONNER,
Plaintiff-Appellee,

v.

STEVEN A. MCGRAW, Clerk of the
Circuit Court of Roanoke County,
Virginia,
Defendant-Appellant,                                        No. 94-1513

and

ELMER C. HODGE, County
Administrator, Roanoke County,
Virginia; THE COUNTY OF ROANOKE,
VIRGINIA,
Defendants.

Appeals from the United States District Court
for the Western District of Virginia at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CA-92-559)

Argued: February 1, 1995

Decided: December 30, 1996

Before ERVIN and NIEMEYER, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Reversed and remanded by unpublished opinion. Judge Ervin wrote
the opinion, in which Judge Niemeyer and Senior Judge Young
joined.

_____

**COUNSEL**

**ARGUED:** William Fain Rutherford, Jr., WOODS, ROGERS &
HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellant. Donald
Wise Huffman, BIRD, KINDER & HUFFMAN, P.C., Roanoke, Vir-
ginia, for Appellee. **ON BRIEF:** Frank K. Friedman, Philip W. Par-
ker, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke,
Virginia, for Appellant. L. Brad Bradford, BIRD, KINDER & HUFF-
MAN, P.C., Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

2

**OPINION**

ERVIN, Circuit Judge:

Marsha Conner, former Chief Deputy Clerk of the Circuit Court of Roanoke County, Virginia, brought this civil rights action under 42 U.S.C. § 1983, alleging that the Roanoke County Clerk, Steven McGraw, terminated her employment in violation of her First Amendment rights. McGraw moved for summary judgment on the ground of qualified immunity, but the district court denied this motion and McGraw did not file an interlocutory appeal. In ruling in favor of Conner following a bench trial, the district court failed to clarify which strand of First Amendment jurisprudence--the associational right to political affiliation or the free speech right to expressive conduct--served as the basis for its decision. For the reasons that follow, we hold that the district court erred in not granting McGraw qualified immunity and for that reason we reverse.

I.

Marsha Conner became a member of the Roanoke County Circuit Court Clerk's Office in February 1986 and served as a deputy clerk in that office until April 1988. At that time, Elizabeth Stokes, the County Clerk, elevated her to the position of Chief Deputy Clerk. As Chief Deputy, Conner served as the office's second-in-command, reporting directly to the County Clerk. In many respects, Conner functioned as the day-to-day manager of the clerk's office--drafting and maintaining plans for all office operations, preparing and monitoring the office budget, and supervising and evaluating the personnel in the Clerk's office. Conner oversaw management functions such as recordkeeping, discipline, pay and benefits, employee relations, and job classification. In addition to these responsibilities, Conner served at least in part as the office's bookkeeper.

Towards the end of Elizabeth Stokes' tenure as County Clerk, the office became embroiled in a scandal involving alleged financial improprieties. An audit report criticized Stokes for practices involving the collection of marriage fees, the writing of daily batch receipts for minor copying charges, travel voucher irregularities, and the providing of real estate brokers with after-hour access to real estate records.

3

Although the auditor's investigation would become a serious issue in the next election for county clerk, Conner was never implicated in any wrongdoing.

In the campaign leading up to the November 1991 election, Conner was an active supporter of Stokes' re-election bid. [1] Conner passed out pro-Stokes literature, displayed bumper stickers on her car, placed pro-Stokes signs at a voting precinct, and wrote a letter to the editor of the local newspaper, the Roanoke Times & World News, criticizing Steven McGraw, the Democratic candidate for County Clerk, and defending Stokes. Nine of the office's eleven deputy clerks signed Conner's letter, yet Conner's name was the only one to appear in the newspaper. Conner's letter criticized McGraw for his attacks on the Clerk's Office and challenged Roanoke voters to "make the decision themselves rather than have Mr. McGraw make it for them."

The controversy in this case arises from McGraw's decision--soon after he won election in November 1991--not to reappoint Conner to her position as Chief Deputy Clerk.[2] Determining the basis for Conner's termination is complicated by McGraw's ever-changing explanations for his decision. After McGraw's victory, he and Conner attended three meetings together. The first was a group meeting with all members of the clerk's office. Nothing was said with respect to Conner's future as Chief Deputy Clerk. During the second meeting-- attended by McGraw, Conner, and Keith Cook, the head of Roanoke County's Human Resources division--McGraw asked Conner what she knew about Stokes' questionable practices. Conner informed McGraw that she had little knowledge of the problems that had existed under Stokes' leadership. During the third meeting, which took place on December 4, 1991, McGraw informed Conner for the first time that she would not be reappointed. While Conner claims that McGraw told her that "it is just one of those political things and had

_____

[1] In this partisan election, Stokes ran as a Republican and McGraw ran as a Democrat. The Clerk of Circuit Court of Roanoke County, Virginia, is elected by popular vote.
[2] Prior to the election, the Clerk's office consisted of the Clerk, Mrs. Stokes, the Chief Deputy Clerk, Mrs. Conner, and eleven deputy clerks. McGraw retained all of the office's personnel except Mrs. Conner and one deputy clerk.

4

[sic] nothing to do with your ability," McGraw contends that the reason he gave was "incompatibility of management styles." Kathryn Claytor, the County's Assistant Director of Human Resources, confirmed McGraw's version of what transpired at the meeting, which she also attended.

McGraw's explanation for his action continued to change. Between December 4, 1991, and the beginning of the new year, McGraw apparently decided that it would be in his best interests to rephrase his explanation for terminating Conner. In a letter to Conner dated January 1, 1992, McGraw stated that the Chief Deputy Clerk occupied a policy-making position, "and it is within my statutory authority to hire and terminate individuals in that position at my discretion." The district court was particularly suspicious of this letter, believing McGraw's reference to the chief deputy position as a"policymaking" role--the precise description often used to justify public employee terminations under Supreme Court precedent--to be more than a mere coincidence.

II.

Six months after receiving her termination letter, Conner filed this § 1983 action against McGraw, the County Administrator, Elmer Hodge, and Roanoke County. In her complaint, she alleged that her political affiliation "was the only grounds for the failure of the defendant, McGraw, to reappoint the plaintiff to her position as Chief Deputy Clerk."**3** Joint Appendix, at 12.

McGraw filed a motion for summary judgment, asserting a qualified privilege based on the fact that the law in the area of discharge for political affiliation is far from clearly established. McGraw argued that while some positions are protected from political patronage ter-

_____

**3** In light of the seeming clarity of Conner's complaint, we are perplexed by the district court's remark that "Conner does not contend that McGraw terminated her employment because of her political party affiliation." Joint Appendix, at 328. Because our constitutional inquiry turns on the factual question of why McGraw chose not to reappoint Conner, the district court's misreading of the plaintiff's complaint raises doubts about the court's approach to resolving this factual dispute.

5

minations, it is also clear that analogous positions are not. In the absence of a clearly established constitutional right, he maintained that Conner's complaint against him should have been dismissed on the grounds of qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

On defense motions for summary judgment, the district court dismissed all claims as to Roanoke County and Hodge, but held that McGraw was not entitled to qualified immunity. In denying the immunity defense, the district court conceded that there is no case in the Fourth Circuit holding that a chief deputy clerk cannot be terminated for political reasons. Recognizing that "party affiliation must be an appropriate requirement for the effective performance of the public office" in order to permit McGraw to terminate Conner, the court nevertheless concluded that, "[t]he law was clear that the Municipal Defendants could not discharge Conner solely based upon her political affiliations" because requiring political patronage from deputy clerks was inappropriate. The court relied on two decisions in the Third and Eighth Circuits. See Zold v. Township of Mantua, 935 F.2d 633 (3d Cir. 1991) (holding that defendants failed to demonstrate that deputy municipal clerk was appropriately a political patronage job); Barnes v. Bosley, 745 F.2d 501 (8th Cir. 1984) (holding that unit manager in St. Louis circuit court did not require political affiliation for the position), cert. denied, 471 U.S. 1017 (1985). While the district court also referred to our decision in Stott v. Haworth, 916 F.2d 134 (4th Cir. 1990), it failed to note that the Fourth Circuit did not find the law to be clear and well-established, but rather found it to be inconsistent and unpredictable. See id. at 144.

At trial, McGraw returned to the issue of incompatible management styles and claimed that many members of the Clerk's Office had complained about Conner's leadership style. On cross-examination, however, McGraw was unable to provide the court with specific names or incidents. The court found that McGraw's criticisms lacked merit, particularly in light of the testimony of five witnesses who spoke very highly of their professional relationships with Conner, including Elizabeth Stokes, Conner's supervisor for five years. McGraw's vacillation as to his reason for not reappointing Conner contributed to the district court's overall skepticism of McGraw's version of why Conner was not reappointed. The court stated that

6

McGraw's testimony appeared "incomplete, inconsistent and had the ring of pretext." Id. at 7. On the other hand, the court found Conner's "demeanor on the stand during direct and cross examination [to be] direct and forthright." Id.

The district court was most skeptical of McGraw's attempt to characterize his termination decision as unrelated to Conner's active support of Stokes during the campaign. The court specifically found "Conner's version of the [December 4, 1991] meeting more credible." Joint Appendix, at 325. At trial, Conner never wavered from her claim that McGraw had told her that her termination was purely political in nature.

The district court held a bench trial on the merits and found:

> From this evidence I have no trouble concluding that the defendant, Steven McGraw, illegally terminated the plaintiff, Marsha Conner, in violation of her First Amendment rights. I find that McGraw terminated Conner because she supported his political opponent and because he wished to reward a long-time political supporter with a job as Chief Deputy Clerk.

The district court found damages in the amount of $54,990, and entered judgment in favor of Conner against McGraw personally, without clearly indicating which aspect of Conner's First Amendment rights had been jeopardized by McGraw's action. McGraw appealed.

III.

Before it would be appropriate for us to address Conner's claims on the merits, we must remember that the Supreme Court has instructed that we address the threshold matter of qualified immunity first. See Siegert v. Gilley, 500 U.S. 226, 232 (1991) (holding that district court should have dismissed suit because plaintiff had not overcome defendant's qualified immunity claim); Torcasio v. Murray, 57 F.3d 1340, 1352 (4th Cir. 1995) (concluding that courts are to consider as a threshold matter whether officials are entitled to qualified immunity and, only if not entitled, move on to other issues); DiMeglio

7

v. Haines, 45 F.3d 790, 797 (4th Cir. 1995) (concluding that court reviewing qualified immunity defense should assess, before anything else, whether alleged conduct violated law clearly established at time conduct occurred). Our review of the district court's rejection of qualified immunity in light of Fourth Circuit precedent at the time McGraw fired Conner, discloses that it should have found that our precedent would have given McGraw qualified immunity.

Under the doctrine of qualified immunity, government officials are immune from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because the right asserted by Conner was not clearly established when McGraw dismissed her, McGraw is immune from suit.

In this case, McGraw felt that his chief deputy, the second-in-command, could be fired after the election based on political patronage. The district court made the factual finding--which we cannot question--that McGraw terminated Conner "because she supported his political opponent and because he wished to reward a long-time political supporter with a job as Chief Deputy Clerk."

Even though Conner supported McGraw's political opponent in part by publishing a letter to the editor, the totality of the evidence and the finding of the district court was that Conner was discharged because of her political association. That is the only reason alleged in the complaint; it is the only reason addressed by the district court when it ruled on the immunity question; and it is the factual finding made by the district court that now binds us, unless we are willing to conclude that the finding was clearly erroneous. We do not so conclude.

When an employee is discharged because of political affiliation, allegedly in violation of the First Amendment, the burden is on the discharging authority to demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. See Elrod v. Burns, 427 U.S. 347 (1976) (holding that practice of political patronage dismissals and replacements impinges on

8

employees' First Amendment freedoms of political association);
Branti v. Finkel, 445 U.S. 507 (1980) (similar holding).

While no one disagrees with a general statement of the principles of the Elrod/Branti line of cases, the jurisprudence of what offices are legally subject to political patronage terminations has been a burning and unresolved issue that has not been resolved even yet in this circuit, or indeed elsewhere. Less than a year before McGraw terminated Conner, we conducted a survey in the Fourth Circuit as well as in other jurisdictions to determine which positions could require political patronage. See Stott v. Haworth, 916 F.2d 134, 143-144 (4th Cir. 1990) (stating that "[w]e cite these cases, a representative, not complete, list, only for illustrative purposes, and that illustration shows that these cases must necessarily be considered individually"). We pointed out that the following employees were subject to removal based on their political affiliation: confidential secretary; deputy service officer at a county veterans' service; coordinator, pretrial release program; regional director of the Department of Housing and Development; assistant city attorney; assistant county attorney; city police chief; assistant director of public information for a county; first deputy commissioner of a water department; deputy sheriff, superintendent of employment for a park district; assistant district attorney; assistant state's attorney; fee agent; city solicitor and assistant city solicitor; senior citizens coordinator; deputy parks commissioner; state director of farm home administration. We noted, however, that similar positions were held to be not subject to political patronage terminations, including: school district director; school superintendent; electoral board registrar; city court bailiff; road graders; bookkeeper; deputy court clerk; deputy sheriff; administrative director of the Department of Transportation; supervisor of the county branch of an auditor's office; city clerk; attorney, department of social services.

Unable to draw any conclusions from the array of individualized decisions, we stated in Stott, "It is also clear that application of Elrod/Branti in the various jurisdictions has produced seemingly inconsistent and unpredictable results." Id. at 144. Thus, less than a year before McGraw made his decision with respect to Conner, the last word in the Fourth Circuit was that the law was not well-established, but rather "inconsistent" and"unpredictable."

9

At the time that McGraw terminated Conner, he stated that he did it for political reasons, believing that the Chief Deputy position required political patronage. Conner accepted those reasons, as evidenced by her contemporaneous memorandum written in December 1991, in which she stated that her dismissal was a "political decision." In light of the existing precedent and the fact that Conner was the number two person under McGraw, who was an elected official, we conclude that McGraw held the objectively reasonable belief that Conner's position was subject to political patronage dismissal since she too would be called on to give effect to the policies of his office. While the number two position in the clerk's office is also substantially an administrative position, it nevertheless remains the backup policy position for the clerk.

Without the need, however, of resolving the question of whether the Chief Deputy Clerk in Roanoke County is in fact a policy-making person, it cannot be reasonably disputed that the law on this subject was not well established. As the Supreme Court has stated, the unlawfulness must be apparent:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Anderson v. Creighton, 483 U.S. 635, 640 (1987). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Summer, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 113 S. Ct. 1048 (1993).

Conner focuses on the letter that she wrote to the editor of the newspaper during the campaign in which she criticized McGraw's administration. Even if we analyze this case as if the dismissal was based on the writing of the letter rather than Conner's political affiliation, the result is the same. The use of the balancing test for scrutinizing terminations based on constitutionally protected speech would not alter our conclusion. See Pickering v. Board of Educ., 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983). Under such a balanc-

10

ing test, we would still be required to determine whether under the Pickering/Connick line of cases the law was sufficiently well established that a reasonable person in McGraw's position would have known that he was violating the law in terminating Conner. We hold that just as in the area of the Elrod/Branti line of cases, the Pickering/Connick line of cases was, and today is, not much clearer when applied to particularities. Indeed, the application of the constitutional principle is a multi-stepped balancing test that does not dictate an outcome in a particular case.

Recently we observed that the Pickering/Connick balancing test is particularly difficult and suggested that the right to terminate certain employees for their political speech is not "clearly established." See Orga v. Williams, No. 94-1876, slip op. at 8-10 (4th Cir. Oct. 6, 1995) (unpublished). In Orga, we recognized the qualified privilege for a public official discharging an employee in circumstances similar to those before us. Faced with the question of whether a sheriff could fire two deputy sheriffs because they spoke in favor of the opposing candidate and had letters written on behalf of that candidate, we concluded that the sheriff was immune when he was sued for terminating the deputy sheriffs. We referred to Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir. 1992), which concluded that "qualified immunity should rarely be denied under Connick." See also Joyner v. Lancaster, 815 F.2d 20 (4th Cir.), cert. denied, 484 U.S. 830 (1987) (upholding a sheriff's dismissal of a senior captain of North Carolina Sheriff's Department because he actively campaigned for sheriff's opponent); cf. Olivio v. Mapp, 57 F.3d 1067 (4th Cir. 1995) (unpublished) (finding qualified immunity for sheriff who dismissed deputy sheriff for failing to support sheriff's campaign). It would be an ill-defined jurisprudence today if we were to find that our cases afforded immunity for the dismissal of a deputy sheriff for supporting a political opponent but did not do so in the case of a chief deputy clerk.

The area of discharge for the exercise of First Amendment rights, whether of free speech or political association, is one of the most complex that we have to apply. When the courts have applied it inconsistently to justify dismissals of some employees and not others, it is simply expecting far too much of an objectively reasonable elected chief clerk to conclude that he is not entitled to fire his chief

11

deputy clerk when he takes office in order to have his own administration carry out the policies of his campaign.

IV.

For these reasons, we hold that McGraw is entitled to qualified immunity and we reverse the judgment of the district court and remand the case to that court with directions to dismiss it.

REVERSED AND REMANDED

12